In our next case and last case for argument this morning is United States against, I believe it's pronounced Ugbah or Ugbay. Good morning. Just one moment, Mr. Mijas. Let's wait for Ms. Dutchman. Okay. All right. There she is. We can proceed. Go ahead, Mr. Mijas. Thank you. Your Honor, this matter involves a compassionate release motion that was filed on behalf of Mr. Ugbah. Mr. Ugbah is a non-citizen incarcerated in a private prison in Michigan, the North Lake Correctional Facility. I think what you find striking is if you look at the text order, it says, quote, releasing him to home confinement now would deprecate seriousness of the offense and impact on the victims. In that 355-3 analysis, the district court erred in the status of my client. My client was never going to be released to home confinement. It was never argued that he'd be released to home confinement. He would go directly to ICE imprisonment and then deported to Nigeria. I think that in and of itself shows the court clear error, abusive discretion on the part of the district court. In trying to evaluate those elements of the 355-3 factors, plus these Section 1B 1.13 as far as the danger to the community, to get the facts wrong is to abuse your discretion. At a level where the fact is he would not be in this country to be a danger to society, to impact the victims. That could have been avoided. Full briefing on this matter probably would have avoided that error. Instead, the judge relied simply on our motion and a quick update as to the COVID status of the private prison. Oral argument would have fixed that problem. I think it's especially striking in this standpoint, where the court finds compelling circumstances, where the court acknowledges that he is at an elevated risk for COVID infection and serious consequences to it. When you have that, to deny that opportunity to then explain what is different from sentencing, I think strikes a due process. So at a deeper level than just the plain error that is seen in the order, to find that these are extraordinary and compelling circumstances that Mr. Ogba finds himself in, and to deny him the opportunity to speak further on it, to reply in a briefing, to demand a response from the government, I think goes towards a denial of his due process rights. I think it underscores the concerns that Congress had in expanding the First Step Act. Compassionate release has been around a long time. It was solely for the prisons to grant. Congress found that was too limited. It expanded the use of compassionate release in order to have more of them granted. This is more of a cursory finding. And when you look at the 355-3A factor analysis, I think it betrays what Congress wanted in expanding the First Step Act. The most relevant, imminent, personal factor of Mr. Ogba is, one, his status in a COVID environment where he's at risk. And that is a change of circumstances from where he stood six years prior in front of the court when he was sentenced. Further, it's his rehabilitation. When you do not acknowledge that this is a changed person from the person you saw, and you don't even mention that, that's problematic. That ignores just human nature that can change. Mr. Mias, why does a district court have to discuss things that in the district court's view are not pertinent to its decision? Why can't the district judge say, I'm denying release for reason X and everything else is irrelevant? Your Honor, I think because when you look at the 355-3A factors, they're taken as a whole and not just for one reason. And in explaining why that one reason... No, counsel, that's the question I'm asking. Yeah. Why can't the district judge say, this person's punishment is not complete? It's really too early to release him. That's my reason. Because if the district... Because when Congress issued these 355-3A factors in the law, it required the district courts to look at all the factors and compiling them to... What in section 3582 requires a district judge to effectively re-sentence the defendant? We've held that the statute does not require full re-sentencing. I'm trying to figure out what in 3582 requires a district judge to traipse through all of the factors that would have been relevant to the initial sentence. Because 3582 seeks to find the defendant in the status that he is now. Not at sentencing from six, seven years ago. Look, counsel, I'm asking a question about the statute. What is it in 3582 that requires a district court to go through all of the factors relevant to the initial sentence? There must be some language there that, in your view, does that. And I'm asking you to tell me what it is. Your Honor, I think if you look at 3582-A, it says, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of shall consider the factors set forth in section 3553-A as a whole. That's the initial sentence. Maybe I'm not being clear, but I'm trying to figure out why, in determining for 3582, other subsections, whether the reasons for relief are extraordinary and compelling, why a district judge is required to go through all of the criteria that would be pertinent to the initial sentence. Your Honor, if you go to subsection C, sub 1, sub A, for modification of an imposed term of imprisonment, it indicates after considering the factors set forth in 3553-A to the extent they are applicable. I think if, when you see the language, and it says the factors set forth in 3553-A, it says so as a whole, which is the original term. Mr. Behas, subsection C uses discretionary language. Subsection A uses mandatory language, and that's the distinction that's being inquired about here. Sentence modification is wholly discretionary. There is no requirement on its face to weigh the 3553-A factors in ruling on the motion. That makes it markedly different from subsection A, which uses the term shall. Subsection C uses the term may. I think I need to reemphasize when the court does so and makes clear factual error in its analysis of those 3553-A factors, it's reason to send it back to the district court because, and in reality, with briefing, with oral argument, with a full consideration of the 3553-A factors, I don't think the district court would have made that plain error and may have very well ruled differently in its analysis of whether a release was allowed. Counsel, did Ogba represent to the district judge that if released, he would go straight from the prison to Nigeria? He represented that he would go into ICE detainment and he would go to Nigeria. Please answer the question. Did he represent that he would go straight to Nigeria? No, that's impossible. In other words, he would continue resisting removal. He did not say he would continue resisting removal, Your Honor. Well, if he wasn't going to continue resisting removal, why wouldn't he tell the judge, I will go straight from prison to Nigeria? Your Honor, if we had had the opportunity to further brief this and argue that to the district judge, that would have been made if that had been a question of the judge. It's easy to put that in the application for release. Your Honor, when you are subject to an ICE detainer, you don't necessarily consider what options you have. As far as home confinement, though, Your Honor, I don't believe, and I understand what you're saying. I'm not trying to challenge you on that, but Mr. Ogba, in his application, concedes he will be under ICE jurisdiction and deported. I think he gets to that point. He's conceding, may not be openly, but implicitly, that because of his conviction, he's going to be deported to Nigeria at the leisure of ICE. All right. Thank you very much. Your time has expired. Is it Duchman? Am I pronouncing that correctly? You're still muted. Can you hear me now, Judge? Yes. Okay, thank you. Sorry about that. May it please the Court, my name is Meredith Duchman. I do represent the appellee of the United States in this case. We believe the district court's order denying the defendant's motion for compassionate release should be affirmed. I think the district court did it exactly right here. Contrary to the defendant's many complaints, we think that the district court's order denying relief makes clear that the court did consider the defendant's elevated risk for developing complications from a COVID-19 infection, but determined that the 33A factors did not ultimately support a sentencing reduction. The district court didn't abuse its discretion. It didn't violate the defendant's due process rights. The defendant keeps harping on this reply brief issue, but there's no entitlement to file a reply brief. He cites no support for that. The defendant filed his own motion. He chose when to file the motion. He supported, he sent a lengthy brief in support. He had the opportunity to make any arguments, submit any exhibits. To the extent he now says, well, gee, in hindsight, I would ever should have offered additional evidence or argument. That's not the district court's fault. And it feels like the chief complaint here is really that he just doesn't like how the court weighed factors. But that is the district court's purview. And this is really particularly true where he'd been sentenced in November 2017 by the same judge in a very lengthy contested sentencing. And then in his supervised release order, yeah, in his compassionate release order, I should say, the court made it clear that he felt like releasing him in any capacity would depreciate the seriousness of the offense and produce an unwarranted sentencing disparity between similarly situated offenders, including offenders the judge had sentenced in the same case, which is significant. And this deportation argument, I have to tell you, I was the original lawyer on the case. And this deportation argument was central to the sentencing. The defendant continued to harp on it at the original sentencing that he was not a danger to the public because he was sure to be deported to Nigeria. And the judge was not having any of that. The defendant in this case actually received an enhancement for some of the crime being perpetrated from outside the United States. These types of cyber crimes are those that can be perpetrated from outside the United States. And so the district court found that he was an enduring danger and a significant danger. Indeed, didn't that happen here? Wasn't part of the fraud perpetrated in England? It was perpetrated in England. The UAE and Nigeria. England and Nigeria, yes. There were co-conspirators in a number of different countries, co-conspirators who moved money and co-conspirators who defrauded folks. And so this argument that, you know, he's not a danger because he was going to be deported to Nigeria was just a non-starter with the court. And I think that the court was very clear that he knew this defendant. He was not confused. He knew exactly what he was doing. He followed the procedure he's supposed to follow. He acknowledged that he had exhausted administrative remedies. He acknowledged his medical conditions. And then said, well, even assuming that, I'm just not going to release you under 3553A. And this notion of, well, the judge types home confinement in one sentence, you know, first of all, that's the first time the defendant, at least as far as I can remember, has raised that criticism. And I just don't think that's definitive on the record here, whether he's released to home confinement, whether you call it a sentencing modification, whether you call it just early release, compassionate release, the bottom line was the defendant was not going to get out on this record. And the district court did not abuse his discretion in making that determination. So unless the court has any other questions, the government would rest on its briefs and ask the court to affirm the judgment of the district court. Thank you very much. Mr. Mihas, your time had expired, but you may have an extra minute if you have something to say in rebuttal. I appreciate that, Your Honor. Simply in response to Judge Easterbrook, in page 10 and 11 of our motion, in our reply brief, we do indicate that he would be deported upon release. That's admitted. But in sum, it's important that the record remain clean. And when a judge makes factual, clear, factual errors in his determination, we should not be reading into what we believe the judge intended, as Ms. CAUSA just did. We don't know what the judge intended. And when there's factual error, clear, factual error made, it's up for speculation what the judge intended to do. And so I'm sure the AUSA is convinced of what she remembers of the case, but that was not put into any of the briefing. It's read into it. And so I would ask the court to remand it for further proceedings to clean the record up and to provide full briefing on this matter. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and that concludes today's calendar. The court will be in recess.